ROY CRAM, Appellant, *v.* WELLS CARGO INC., a Corporation, JOE W. WELLS, F. M. FRANDSEN and NEVADA ROCK AND SAND COMPANY, INC., Respondents.

No. 3714

February 13, 1953.                    253 P.2d 200.

See also 70 Nev. 109, 256 P.2d 96.

*Taylor & Gubler,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, for Respondents Wells Cargo Inc., a Corporation, and Joe W. Wells.

*G. William Coulthard,* of Las Vegas, for Respondents F. M. Frandsen and Nevada Rock and Sand Company, Inc.

## OPINION

By the Court, MERRILL, J.:

In December, 1949, Cram as mortgagor was faced with a suit to foreclose a chattel mortgage covering certain heavy dirt-moving equipment, which mortgage was held as security for a note on which a balance of $39,-088.90 remained due. In an effort to avert foreclosure, Cram sold certain of the equipment covered by the mortgage for the sum of $24,500. This sum was applied upon the mortgage and the equipment sold was released therefrom. Following negotiations between Cram and the Nevada Rock & Sand Co., the balance of $14,588.90 was then paid to the mortgage holder by that company

which, on January 7, 1950, took an assignment of the mortgage from the holder and, in addition, a bill of sale from Cram covering the five items of equipment remaining subject to the mortgage.

On March 15, 1950, all five items of equipment were sold by Nevada Rock & Sand for the sum of $16,500 to Wells Cargo, Inc., which then took possession. No notice of the sale was given to Cram and Nevada Rock & Sand has since retained the whole of the sale proceeds. On December 24, 1950, Cram retook possession of two of the items of equipment and this action was brought by Wells Cargo for claim and delivery of the two items. Cram counterclaimed for conversion of the five items covered by the transaction with Nevada Rock & Sand, claiming equitable title and right to possession thereof for the asserted reason that such title and right had never properly been foreclosed. Nevada Rock and Sand and certain individuals were joined as defendants to the counterclaim. Following trial before the court without a jury, judgment was rendered for Wells Cargo upon its complaint and, upon the counterclaim, for the defendants thereto. Cram has taken this appeal from that judgment.

Two questions are presented upon this appeal.

First: Whether the transaction between Cram and Nevada Rock and Sand was a security transaction and to be regarded as a chattel mortgage; or whether, as contended by respondents, it was an outright sale of the equipment for $14,588.90.

Second: If it was, in character, a chattel mortgage and not an outright sale, whether Nevada Rock & Sand had power to foreclose by private sale without notice.

Upon the first question, we are convinced from the record that the transaction was intended by the parties as one for security only and not as an outright sale. From the testimony of both the president and the treasurer of Nevada Rock & Sand it is clear that the sum paid by it was regarded by it as a loan rather than as a

purchase price; that the money thereafter was regarded as due and owing from Cram; that with respect to the equipment and its desire for a bill of sale thereto, its concern was not that of acquisition but rather that of ability to secure speedy realization by sale. The company had allowed Cram to February 15, 1950, within which to make payment of the balance due. Respondents contend that this was simply an option period during which Cram was given the right to repurchase the equipment. A letter written to Cram on February 7, 1950 by the treasurer of the company, however, conclusively demonstrates that the transaction, as the company understood it, constituted a chattel mortgage and not a sale with option to repurchase. The letter reads:

"This letter is to advise you that your chattel mortgage bearing date of December 1, 1948, in an original amount of $48,000.00 and assigned to us on January 7, 1950, with a balance of $14,558.99 including interest and other advances to that date, together with interest at the rate of 5% per annum and any and all other advances that has been made or will be made, is now past due and payment should be made at our office in Reno, Nevada, on or before February 15th, 1950.

"Demand is hereby made that all such amounts due under the chattel mortgage be made on or before that date.

"Should payment not be made on the above date, we shall recover the amount due according to the terms of the chattel mortgage."

Upon the second question, however, it is clear that the sale to Wells Cargo was pursuant to a power of sale incorporated in the chattel mortgage assigned to Nevada Rock & Sand. The mortgage instrument contained the following:

"Upon default by the Mortgagor of any of the terms, covenants, conditions or agreements of this Mortgage, it is agreed that all of the rights granted the Mortgagee, under Covenant No. 13 of [sec. 4330, N.C.L.1929], are

hereby granted to the Mortgagee herein and extended to all of the chattels herein mortgaged."

Section 4330, N.C.L.1929 provides: "In any mortgage of real or personal * * * property, hereafter made, the parties may adopt by reference all or any of the following covenants, agreements, obligations, rights and remedies: * * *." Among the rights granted the mortgagee by covenant No. 13 is the right to sell "with or without notice to the mortgagor, at either public or private sale." That covenant reads: "Upon default of any of the terms, conditions, covenants, or agreements of any chattel mortgage whereby live stock is mortgaged, it is agreed that the mortgagee may, without foreclosure and without legal proceedings and without any previous demand therefor, with the aid or assistance of any person or persons, enter upon the premises and ranges of the mortgagor or such place or places as any of the property subject to the lien of the mortgage is or may be found, and take, lead, drive or carry away the mortgaged property or any part thereof, and with or without notice to the mortgagor, at either public or private sale, sell and dispose of the same or so much thereof as may be necessary to pay the amount and sums secured by the mortgage, for the best price it can obtain, and out of the moneys arising therefrom it shall retain and pay the sum or sums then due or payable under the lien of the mortgage, and interest thereon, and all charges and expenses incurred in gathering, feeding, caring for, and selling the property or any part thereof, and any other expenses and charges incurred by the mortgagee, and all other sums secured by any of the terms of the mortgage, and any overplus shall be paid to the mortgagor. The mortgagee is expressly authorized and empowered, upon any such sale, to make and execute such bills of sale or other conveyances necessary to convey to the purchaser or purchasers thereof an absolute title in the property so sold. * * *"

Cram contends that this covenant by its express terms is limited to mortgages of livestock and therefore is not

available in such a case as this.  In so contending, however, Cram misconceives the purpose and effect of the act in question.  The purpose is to simplify the drafting of mortgage instruments; to enable the parties to include standard provisions by simple reference rather than by a setting forth in full.  It is not intended to provide to parties rights which were not theretofore available to them by contract or to take from them the right to contract in certain respects.  It cannot be denied that had the parties expressly agreed that the mortgagee have the rights covered by covenant 13, setting forth those rights at length in the mortgage instrument, such an agreement would have been binding.  That such rights were not set forth at length does not serve to nullify the agreement of the parties in this regard when the terms of the agreement are, by specific reference, so clearly made subject to ascertainment.

We conclude that the sale by Nevada Rock & Sand to Wells Cargo was pursuant to a grant of power of sale; that good title and right to possession passed thereby to Wells Cargo.  If Cram possesses any claim against Nevada Rock & Sand for accounting or overplus, his remedy is not in conversion.

Judgment affirmed with costs.

EATHER, C. J., and BADT, J., concur.